2026 WL 1180138
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Maksudar RAHMAN, Petitioner,
v.
Lawrence CATLETTI et al., Respondents.

26 Civ. 3054 (PAE)
|
Signed April 30, 2026

**Attorneys and Law Firms**

Edward J. Cuccia, Edward J. Cuccia, PC, New York, NY, for Petitioner.

Dominika Natalia Tarczynska, DOJ-United States Attorney's Office, New York, NY, for Respondents.

OPINION & ORDER

PAUL A. ENGELMA YER, District Judge:

**\*1**  On March 9, 2026, petitioner Maksudar Rahman, a citizen of Bangladesh who had been released on his own recognizance in the United States, was detained by U.S. Immigration and Customs Enforcement ("ICE"). On April 14, 2026, he filed a petition for a writ of habeas corpus, seeking immediate release or a bond hearing. Dkt. 1 ("Petition"). That day, the Court ordered respondents (collectively, the "Government") to respond to the petition by April 20, 2026. The Court specifically directed the Government to state whether the case is materially distinguishable from *Yao v. Almodovar*, 813 F. Supp. 3d 461 (S.D.N.Y. 2025). Dkt. 6 at 1. In *Yao*, the petitioner was detained by ICE during a routine check-in, after having been released on his own recognizance when he was initially apprehended upon his illegal entry into the United States. *Id.* at 465. The Court found that Yao was detained pursuant to 8 U.S.C. § 1226(a), under which detention is discretionary, and not, as the Government had argued, pursuant to 8 U.S.C. § 1225(b)(2)(A), under which detention is mandatory. *Id.* at 467. As a remedy for the due process violation it found, the Court ordered Yao's release.

The Government acknowledges that *Yao* controls this case as to the statutory basis for Rahman's detention. Dkt. 7 ("Opp'n") at 2. As in *Yao*, Rahman's detention is governed by § 1226(a), such that he was entitled to a bond hearing promptly upon his detention. And the Court's conclusion in *Yao* was confirmed by the Second Circuit's decision this week in *Cunha v. Freden*, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). The Circuit there held—consistent with the decisions of the vast majority of district courts around the country—that the petitioner, who had been arrested and detained by ICE more than 20 years after his entry without inspection and admission, had been detained under § 1226(a), not § 1225(b)(2)(A). *Id.* at *3–4.

The Government, however, argues that the remedy in *Yao*—release—is not merited here, and to that extent, opposes the Petition. [1] Opp'n at 3. It notes that, unlike in *Yao*, where the petitioner's arrest was not prompted by any assessment of individualized circumstances, ICE detained Rahman based on his arrest for assault the prior year. Thus, it argues, were the Court to find Rahman detained under § 1226(a), it should find that Rahman is entitled to a bond hearing before an immigration judge ("IJ"), not immediate release.

The Government is correct. The circumstances here, in fact, are nearly identical to those in *Martinez-Lopez v. Reid*, No. 26 Civ. 2893 (PAE), 2026 WL 1133933 (S.D.N.Y. Apr. 27, 2026). There, this Court recently found that the petitioner (1) as in *Yao*, had been detained under § 1226(a), not § 1225(b)(2)(A); (2) was not entitled to immediate release, because ICE had exercised its discretion when it detained him based on a recent arrest, but instead (3) was entitled to a prompt bond hearing. The same three findings are warranted here.

First, the statutory basis for Rahman's detention, in light of *Yao* and *Cunha*, is clearly § 1226(a). The factual synchronicity with *Yao* is particularly acute. In each case, the petitioner unlawfully entered the United States and was immediately apprehended, taken into custody, and released on his own recognizance pursuant to Immigration and Nationality Act ("INA") § 236—*i.e.*, § 1226. *See* Dkt. 7-1 ("Rousseau Decl.") ¶¶ 4–5; Dkt. 7-2 ("ROR") at 2; *Yao*, 813 F. Supp. 3d at 465. Each was served with a notice to appear, stating that he was subject to removal under 8 U.S.C § 1182(a)(6)(A)(i), which makes a noncitizen present in the United States without admission or parole inadmissible. Rousseau Decl. ¶ 6; *Yao*, 813 F. Supp. 3d at 465. Each was directed to appear before an IJ at a specific date and applied for relief from removal. Rousseau Decl. ¶¶ 6–7; *Yao*, 814 F. Supp. 3d at 465. Each, during a routine check-in at 26 Federal Plaza, was taken into custody and served with an arrest warrant. [2] Rousseau Decl. ¶ 9; *Yao*, 814 F. Supp. 3d at 466. Accordingly, Rahman is and

remains detained pursuant to § 1226(a). *See Cunha,* 2026 WL 1146044, at \*2.

**\*2** Second, the record supports that, as required by § 1226(a) and the due process clause of the Fifth Amendment, ICE exercised its discretion in detaining Rahman. A condition of Rahman's ROR, served on May 7, 2024, was that he "not commit any crimes while on this Order of Release on Recognizance." ROR at 4. On January 31, 2025, Rahman was arrested for assault in the second degree in Maryland (although the charge was later dismissed based on a *nolle prosequi).* Rousseau Decl. ¶ 8. On March 9, 2026, when Rahman went to 26 Federal Plaza for his scheduled check-in, ICE informed him that his ROR was canceled because he had failed to comply with the conditions of his release based on that arrest. [3] *Id.* ¶ 9. Like Martinez-Lopez's, Rahman's detention thus is distinct from Yao's, in that Yao had complied with all conditions of release and ICE conceded it had not "exercised any discretion *at all*" in detaining him, thus violating Yao's due process rights. *Yao,* 813 F. Supp. 3d at 475–76 (emphasis in original). Here, ICE exercised discretion by detaining Rahman based on his prior arrest. *See Martinez-Lopez,* 2026 WL 1133933, at \*4 (ICE exercised discretion in detaining petitioner "based on the individualized circumstances presented by his arrest"). Although ICE did not conduct an individualized risk assessment, *cf. id.* at \*2, the record supports that it canceled his ROR "due to his January 31, 2025 assault arrest," Rousseau Decl. ¶ 9, and thus "exercised some discretion" in detaining him. [4] *Sharifzoda v. Orange Cnty. Jail,* No. 26 Civ. 2486, 2026 WL 851378, at \*2 (S.D.N.Y. Mar. 27, 2026) (evidence suggested exercise of "some discretion" where petitioner detained during routine check-in shortly after domestic violence arrest) (citation omitted); *see also Gunduzalp v. Joyce,* No. 26 Civ. 2330, 2026 WL 948736, at \*3 (S.D.N.Y. Apr. 8, 2026) (same, where Government acted on tip that petitioner presented public safety risk). Rahman thus has not established that the decision to detain him was made without any exercise of discretion—the basis on which the Court ordered Yao's release.

Third, as in *Martinez-Lopez,* Rahman is entitled under § 1226 to a prompt bond hearing consistent with due process "at which the Government bears the burden of proving, by clear and convincing evidence, that [he] is a danger to the community or a flight risk." *Guedez v. Catletti,* No. 26 Civ. 2463, 2026 WL 962575, at \*2 (S.D.N.Y. Apr. 9, 2026). Under federal regulations, noncitizens "detained under § 1226(a) receive bond hearings *at the outset of detention.*" *Jennings v. Rodriguez,* 583 U.S. 281, 306 (2018) (citing 8 C.F.R.

§§ 236.1(d)(1), 1236.1(d)(1)) (emphasis added); *see also Johnson v. Arteaga-Martinez,* 596 U.S. 573, 579–80 (2022) (same). It is undisputed that ICE has failed to provide such a hearing since it took Rahman into custody on March 9, 2026, nearly eight weeks ago. On April 2, 2026, the IJ denied him bond, not on the merits, but on the incorrect premise that Rahman had been taken into custody under § 1225(b)(2)(A), and thus was subject to mandatory detention. *See* Rousseau Decl. ¶ 12 (citing *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216, 219–20 (BIA 2025)). But that premise, as explained above and in *Cunha,* was wrong, as was the administrative precedent on which the IJ relied. *See Villegas ex rel. Guzman Andujar v. Francis,* 815 F. Supp. 3d 248, 256–57 (S.D.N.Y. 2025) (collecting cases disagreeing with *Yajure Hurtado,* as "contrary to the [INA's] statutory scheme, Supreme Court jurisprudence, and decades of [Department of Homeland Security] practice").

At the bond hearing, ICE will be at liberty to establish—and Rahman will be at liberty to refute—that he presents a danger to the community and/or a risk of flight. *See, e.g., Sharifzoda,* 2026 WL 851378, at \*1–2 (finding petitioner detained under § 1226 and ordering bond hearing, where ICE exercised discretion to detain petitioner based on arrest for domestic violence); *Guachambala v. Lyons,* No. 26 Civ. 1835, 2026 WL 686154, at \*2–3 (S.D.N.Y. Mar. 10, 2026) (same where ICE detained petitioner based on pending drunk driving charges); *Gunduzalp,* 2026 WL 948736, at \*3–4 (same where ICE detained petitioner based on receiving tip that he posed public safety risk). [5]

**CONCLUSION**

**\*3** For the above reasons, the Court grants in part and denies in part the petition for a writ of habeas corpus. The Court holds that Rahman is subject to discretionary detention pursuant to § 1226(a), not mandatory detention pursuant to § 1225(b)(2)(A). And it finds that, although ICE exercised discretion in arresting Rahman on March 9, 2026, it has failed to provide him with a bond hearing as required by due process, the INA, and its implementing regulations. The Court thus holds that Rahman is entitled to a prompt bond hearing consistent with due process. The Court, however, denies Rahman's request for outright release.

By one week from this Order, an IJ shall hold a bond hearing for Rahman, at which the Government shall bear the burden of proving, by clear and convincing evidence, that Rahman

2026 WL 1180138

is a danger to the community or a flight risk. In determining whether to grant bond, the IJ shall consider the sufficiency of alternatives to imprisonment, including but not limited to release on recognizance and electronic monitoring. In determining the amount of any bond imposed, the IJ shall consider Rahman's ability to pay.

Within 48 hours of the bond hearing, the Government shall file a letter on the docket of this case stating the outcome of the bond hearing. It shall also promptly order a transcript or recording of the hearing and file such on the docket.

SO ORDERED.

**All Citations**

Slip Copy, 2026 WL 1180138

---

### Footnotes

1    Rahman has not filed a reply.

2    The arrest warrant in *Yao* cited § 1226 as the basis for Yao's detention. *Yao, 813 F. Supp. 3d at 466*. The Government did not attach Rahman's arrest warrant here.

3    The Petition states that Rahman has been detained since December 2025. Petition ¶ 19. The evidence submitted by the Government, however, shows that he was first detained by ICE at 26 Federal Plaza on March 9, 2026. Dkt. 7-3 at 3.

4    That the charges against Rahman were ultimately dismissed on a prosecution motion does not defeat this conclusion, because Rahman's arrest on probable cause gave ICE a basis to conclude that he had violated a condition of his ROR. *Cf. Villiers v. Decker, 31 F.4th 825, 837 (2d Cir. 2022)* ("the arrest records provide an indication" that petitioner "violated the do-not-commit-a-crime condition"). At the bond hearing ordered by the Court, *see infra* pp. 4–5, Rahman, of course, will be at liberty to argue that he does not present a danger to the community or a risk of flight, including on grounds relating to the strength (or lack thereof) of the evidence supporting his arrest.

5    *Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001)* does not entitle Rahman to immediate release pending adjudication of his petition. *See* Petition at 7. First, this decision has adjudicated Rahman's petition, acknowledging his entitlement to a bond hearing but otherwise denying relief. Second, "[t]he standard for bail pending habeas litigation is a difficult one to meet." *Grune v. Coughlin, 913 F.2d 41, 44 (2d Cir. 1990)*. Rahman has not shown that "extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp, 241 F.3d at 230* (cleaned up).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 707062
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Alexis Rivera QUINTANILLA, Petitioner,
v.
Thomas DECKER, Director, New York
Field Office, U.S. Immigration and Customs
Enforcement; Peter T. Gaynor, Acting Secretary,
U.S. Department of Homeland Security; Jeffrey
A. Rosen, Acting U.S. Attorney General; Carl E.
Dubois, Sheriff, Orange County, Respondents.

21 Civ. 417 (GBD)
|
Signed 02/22/2021

**Attorneys and Law Firms**

Edgar Loy Fankbonner, Goldberger & Dubin PC, New York, NY, for Petitioner.

Jessica F. Rosenbaum, U.S. Attorney's Office, New York, NY, for Respondents.

MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, United States District Judge:

 **\*1** Petitioner Alexis Rivera Quintanilla seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE"). (*See* Pet. for Writ of Habeas Corpus ("Pet."), ECF No. 1.) Petitioner challenges his detention as a violation of due process, the Immigration and Nationality Act, and the Administrative Procedures Act. Specifically, he argues that the immigration judge presiding over his bond hearing improperly shifted the burden of proof to Petitioner, requiring that Petitioner prove that he is not a flight risk or a danger to the community. (*Id.* at 2.) Petitioner seeks immediate release from custody or a prompt new bond hearing, where Respondents must establish by clear and convincing evidence that continued detention is justified, the adjudicator may not give undue weight to uncorroborated criminal allegations, and the adjudicator must meaningfully consider alternatives to imprisonment and Petitioner's ability to pay if setting a monetary bond. (*Id.* at 34.) Petitioner's petition for a writ of habeas corpus is GRANTED. [1] Within

ten business days, Respondents shall provide Petitioner with a new bond hearing where Respondents will be required to prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community in order to justify Petitioner's continued detention. The immigration judge is also hereby directed to meaningfully consider alternatives to incarceration and Petitioner's ability to pay if setting a monetary bond.

**I. BACKGROUND**

In October 2011, Petitioner, a native of El Salvador, entered the United States without inspection as an unaccompanied minor at the age of thirteen. (Pet. at 8.) He was placed in removal proceedings and released to his godfather, a resident of Nassau County, New York. (*Id.*) In 2014, Petitioner's removal proceedings were administratively closed to permit him to file a petition with the United States Citizenship and Immigration Service ("USCIS") for an immigrant visa under Special Immigrant Juvenile Status ("SIJS"). (*Id.* at 9.) USCIS granted Petitioner's SIJS petition in 2017 and assigned him a priority date of November 27, 2018, at which time he would be able to apply to adjust his status to lawful permanent resident. (*Id.*) However, SIJS applicants from El Salvador are experiencing extended delays and Petitioner continues to wait for his priority date to become "current." (*Id.*) According to Petitioner, his priority date is expected to become current by the summer of 2021. (*Id.*)

On September 28, 2019, Petitioner was arrested in Nassau County and charged with driving while intoxicated. (*Id.*) On February 27, 2020, he pleaded guilty to an unclassified misdemeanor, and was sentenced to a fine and two years of probation. (*Id.*) His license was revoked for one year and he was ordered to install an alcohol interlock device in any vehicle he drove during his probation. (*Id.*) On September 21, 2020, Petitioner was pulled over for a traffic violation. (*Id.* at 10.) In addition to driving on a suspended license, Petitioner did not have an alcohol interlock device installed in the vehicle. (*Id.*) He was charged with both offenses. (*Id.*) These matters are currently pending before the Nassau County Court. (*Id.*) Petitioner has no other criminal record.

 **\*2** On November 12, 2020, ICE arrested Petitioner as he was leaving Nassau County Court for the purpose of placing him back in removal proceedings. (*Id.*) Since then, Petitioner has been in ICE custody at Orange County Jail in Goshen, New York. [2] (*Id.*) He is being held pending removal proceedings,

Quintanilla v. Decker, Not Reported in Fed. Supp. (2021)

2021 WL 707062

pursuant to ICE's discretionary authority under 8 U.S.C. § 1226(a). (*Id.*) On December 14, 2020, the immigration judge held a bond hearing for Petitioner. (*Id.*) After finding that Petitioner had not established that he was not a danger to the community, the immigration judge denied Petitioner's bond application. [3] (*Id.* at 10–11.) Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"), where it is currently pending. (*Id.* at 11.)

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES IS EXCUSED

"Although 'there is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus,' courts generally do require such exhaustion 'as a prudential matter.' " *Joseph v. Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at \*5 (S.D.N.Y. Nov. 21, 2018) (quoting *Nativi v. Shanahan*, No. 16 Civ. 8496 (JPO), 2017 WL 281751, at \*1 (S.D.N.Y. Jan. 23, 2017)). Exhaustion, however, may be excused when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), as amended (July 24, 2003) (citation omitted).

Petitioner's BIA appeal, though still pending, is futile and unable to adequately address Petitioner's substantial constitutional question. "The two remedies Petitioner seeks in the alternative from this Court—immediate release without another bond hearing or a supplemental bond hearing with the burden of proof on the Government—are foreclosed at the BIA based on existing administrative precedent." *Joseph*, 2018 WL 6075067, at \*6. There is no indication that the BIA has expressed a willingness to alter its policy of placing the burden of proof on noncitizens to demonstrate that they are not a danger to the community or a risk of flight in order to merit release on bond. Further, the BIA has no authority to address Petitioner's constitutional challenge and is limited to "render[ing] a decision on ... the burden of proof in a statutory context." *Velasco Lopez v. Decker*, No. 19 Civ. 2912 (ALC), 2019 WL 2655806, at \*3 (S.D.N.Y. May 15, 2019), *aff'd*, 978 F.3d 842 (2d Cir. 2020).

Respondents argue that Petitioner's appeal raises an independent challenge to his bond decision that, if successful, could moot his constitutional challenge, and should therefore be addressed by the BIA before this Court considers Petitioner's habeas petition. (Respondents' Mem. of Law in Opp'n to Pet. for a Writ of Habeas Corpus and Pet'r's Mot. for Order to Show Cause, Prelim. Inj., and TRO ("Respondents' Opp'n"), ECF No. 9, at 13–14.) Specifically, Respondents contend that Petitioner is challenging the immigration judge's finding that Petitioner failed to establish that he is not a danger to society. (*Id.*) Whether Petitioner is raising a challenge distinct from his criticism of the burden allocation is not entirely clear. In any event, even if Petitioner is granted another bond hearing by the BIA, the burden of proof would still be placed on Petitioner, in accordance with longstanding BIA precedent. Petitioner is, thus, appropriately excused from exhausting his administrative remedies.

## III. PETITIONER'S BOND HEARING VIOLATED DUE PROCESS

**\*3** The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that this protection extends to noncitizens, including in removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Moreover, "due process places a heightened burden of proof *on the State* in civil proceedings in which the individual interests at stake ... are both particularly important and more substantial than mere loss of money." *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (emphasis added) (internal quotation marks omitted).

Several courts in this District have already applied these principles to answer the very question presented to this Court. All have concluded that where the Government seeks to detain a noncitizen pursuant to its discretionary authority under Section 1226(a), the Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that the noncitizen poses a risk of flight or danger to the community. *See Velasco Lopez*, 2019 WL 2655806, at \*3 ("[E]very court to have considered the constitutional issue ... has agreed [that] under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a).")"; *see also Garcia v. Decker*, 448 F. Supp.

2021 WL 707062

3d 297, 300 (S.D.N.Y. 2020); *Medley v. Decker*, No. 18 Civ. 7361 (AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019) (collecting cases); *Linares Martinez v. Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *3 (S.D.N.Y. Oct. 17, 2018) (collecting cases). This Court is persuaded by and agrees with the courts' analysis. A noncitizen's liberty interest pending resolution of his removal proceedings is certainly "particularly important and more substantial than mere loss of money." *Cooper*, 517 U.S. at 363. Balancing this significant interest against the Government's interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community," *Zadvydas*, 533 U.S. at 690, "supports imposing the greater risk of error on the Government—specifically, by allocating to it the burden of proof," *Linares Martinez*, 2018 WL 5023946, at *3.

Respondents offer no convincing reason for this Court to depart from the consistent, sound judgment of numerous other courts in this District. Respondents' sole argument is that the Second Circuit's recent decision in *Velasco Lopez v. Decker* forecloses Petitioner's constitutional claim. (Respondents' Opp'n at 17–19.) In *Velasco Lopez*, the Second Circuit found that the petitioner's "prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process." *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020). The Circuit found that this violation would be appropriately remedied by ordering a new bond hearing where the Government would be required to carry the burden to justify continued detention by clear and convincing evidence. (*Id.*) Respondents note that the Circuit declined to announce a bright-line rule shifting the burden to the Government. [4] (Respondents' Opp'n at 18.) The Second Circuit, however, did not determine that the Due Process Clause does not demand such a rule. Rather, the Circuit found that the "case [before it did] not *require* [it] to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," precisely because of the petitioner's prolonged detention. *Velasco Lopez*, 978 F.3d at 855 n.13. Today, this Court joins the "overwhelming consensus of judges in this District" in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention. [5] *Fernandez Aguirre v. Barr*, No. 19 Civ. 7048 (VEC), 2019 WL 3889800, at *3 (S.D.N.Y. Aug. 19, 2019) (citation omitted).

## IV. CONCLUSION

**\*4** The petition for a writ of habeas corpus, (ECF No. 1), is GRANTED. Within ten (10) business days from the date of this Memorandum Decision and Order, Respondents shall provide Petitioner with a constitutionally-adequate, individualized bond hearing to determine whether his detention is justified, at which the burden of proof shall lie with Respondents to prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. The immigration judge is also hereby directed to meaningfully consider alternatives to incarceration and Petitioner's ability to pay if setting a monetary bond. [6]

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 707062

---

### Footnotes

1    Petitioner also moves for an order to show cause, preliminary injunction, and temporary restraining order seeking the same relief. (*See* Mot. for Order to Show Cause, for Prelim. Inj., and for TRO ("PI/TRO Motion"), ECF No. 2.) In light of this Court granting Petitioner's habeas petition, Petitioner's PI/TRO Motion is DENIED as moot.

2    On January 22, 2021, Petitioner was transferred to the Nassau County Correctional Center for a hearing on January 25 in his criminal case in Nassau County Court. (Decl. of Deportation Officer Geraldo Paoli, ECF No. 8, ¶ 20.)

**Quintanilla v. Decker, Not Reported in Fed. Supp. (2021)**

2021 WL 707062

3    Petitioner's Vehicular and Traffic Law ("VTL") violations appear to be the sole basis for the immigration judge's determination with regard to danger to the community. No determination was made by the immigration judge that Petitioner might pose a risk of flight.

4    Respondents further underscore that Petitioner has not been incarcerated for a prolonged period much beyond three months. (Respondents' Opp'n at 18–19.)

5    Because this Court finds that Petitioner's bond hearing violated his right to due process, it need not address his claims under the Immigration and Nationality Act and the Administrative Procedures Act.

6    Petitioner also asks this Court to direct the immigration judge to not give undue weight to uncorroborated criminal allegations. However, immigration judges are permitted to assess "the totality of a detainee's prior criminal history, including arrests and unarraigned charges, in determining danger to the community." *Vargas v. Davies*, No. 15 Civ. 3525 (ER), 2016 WL 3044850, at *4 (S.D.N.Y. May 27, 2016). Moreover, this Court has no reason to believe that the immigration judge who conducted Petitioner's initial bond hearing gave "undue weight" to criminal allegations against Petitioner that would require such a directive.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---